M. J. CORCORAN, Appellee, v. CITY OF DES MOINES, Appellant.

NOVEMBER 15, 1927.

REHEARING DENIED FEBRUARY 17, 1928.

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver, George W. Vest,* and *Don G. Allen,* for appellant.

*Miller, Kelly, Shuttleworth & McManus,* for appellee.

MORLING, J.—The questions argued in behalf of appellant were quite vaguely presented in the trial court, and we have had a good deal of difficulty in determining whether or not they were properly raised below and assigned as error here. No ruling on the motion at the conclusion of the taking of evidence to strike out testimony, or on the motion for new trial, appears, and there were no exceptions to instructions. On the objections made, and on the motions to strike during the reception of evidence, we are, on the whole, of the opinion that the propriety of admitting and retaining evidence (a) of the cost of rebuilding a house formerly situated on the corner in question, and (b) of the cost of new sidewalk and pavement, is before us for review. The grade of Crocker Street in front of plaintiff's premises was lowered. His property extended from Sixth Avenue eastwardly on the north side of Crocker Street 117 feet to an alley. Plain-

tiff had a brick building on the corner, and a frame house and barn close to the line of the alley. The petition alleges that the grades of alleys were required by ordinance to conform to the grades of the streets they intersected. The evidence does not show whether the alley was paved, or whether it conformed to the old grade or was cut down to the new, further than plaintiff's testimony that:

"When the Crocker Street grade was changed, they graded off this alley. It was considerably higher than the street. They just graded back a ways, so they could get up and down with vehicles." "It went down to about the old grade."

He says that, after the alley was cut down, part of the foundation of the frame house "fell out. It was right on the edge of the bank where they scooped it out." He says that "a man called me up, and said he belonged to the city building department," and that, as a result of the conversation with him, he had the house and barn torn down. He says he tore down the house because he felt it was dangerous, "and because some city man called me up and told me it was dangerous, and I would have to tear it down. * * * I was afraid to leave it there, after they tore the foundation from under it."

The house was 40 or 45 years old, and was sold by plaintiff for $30, the purchaser tearing it down. A witness was permitted to testify, over objection, that the market value of the house was $3,348.87, and also that it would cost that much, at the time of the change of grade, to build it. Plaintiff testified that, since the change of grade, new paving and a new sidewalk were laid, at a cost of $804 and $377, respectively. The estimated cost of replacing the barn was $470.60. There was evidence that the foundation was in bad shape, but none that it could not be replaced, or the building saved. The measure of damages for change of grade is ordinarily the difference between the value of the property immediately before and immediately after the change, if there is a diminution as the proximate result of the change (resulting benefits considered), and such diminution does not exceed the cost of making the property conform to the new grade. *Stewart v. City of Council Bluffs*, 84 Iowa 61; *Western Newspaper Union v. City of Des Moines*, 157 Iowa 685; 4 McQuillin on Municipal Corporations, Sections 1991, 2000; 5 Idem (2d Ed.), Sections 2139, 2148. The reasonable

cost of making the buildings and improvements conform to the new grade may be proved, for the information of the jury, and to assist them in determining the net difference in value. Idem; *Schmidt v. City of Milwaukee*, 149 Wis. 367 (135 N. W. 883, 890). The change of grade might have required the rebuilding of the foundation, in which event the character and condition of the old foundation and the reasonable cost of replacing it might be considered. Evidence of cost of a building is also admissible as an aid to the jury in arriving at its present value and the value of the entire property. *Richmond v. D. & S. C. R. Co.*, 40 Iowa 264; *Scott v. Security Fire Ins. Co.*, 98 Iowa 67; *Faust v. Hosford*, 119 Iowa 97; *Hruska v. Rate Estate*, 193 Iowa 588; *Markowitz v. Kansas City*, 125 Mo. 485 (28 S. W. 642); 22 Corpus Juris 177; 17 Corpus Juris 1040; 2 Lewis on Eminent Domain (3d Ed.) 1269, 1270; *Pickles v. City of Ansonia*, 76 Conn. 278 (56 Atl. 552); *Milwaukee Tr. Co. v. City of Milwaukee*, 151 Wis. 224 (138 N. W. 707).

Here, the evident purpose of the introduction of evidence of tearing down the frame house and cost of rebuilding was to show that the loss of the building resulted from the change of grade and incidental excavation made in the alley. Removal of lateral support in improving a street is not, of itself, actionable. *Talcott Bros. v. City of Des Moines*, 134 Iowa 113. See *Morton v. City of Burlington*, 106 Iowa 50; *Thompson v. City of Keokuk*, 61 Iowa 187, 191; *Walter v. City of Ida Grove*, 203 Iowa 1068. The property owner has no remedy for damages resulting from change of grade, other than that given by statute. *Chiesa & Co. v. City of Des Moines*, 158 Iowa 343. Plaintiff's frame house was not built over or in the street, as in the case of shade trees growing in the parking, or in the case of paving and sidewalks, nor as in the case of the porch in *Seaman v. Borough of Washington*, 172 Pa. St. 467 (33 Atl. 756). As has been said, plaintiff's recoverable damage was the diminution in the reasonable value of the property, resulting benefits being taken into account. In arriving at diminution in value, the plaintiff would not be allowed to recover damages for further injuries which he might, by the exercise of reasonable care, and by incurring moderate expense, have prevented. Defendant's interference with the foundation of the house would not be sufficient cause for plaintiff's abandoning it to the city. Plaintiff would be required to

exercise reasonable care to save himself from further loss. If he chose not to make repairs or restoration, but to allow the property to remain in its damaged condition, instead of restoring it, he, and not the city, took the risk. *Stuckemann v. City of Pittsburgh*, 255 Pa. St. 307 (99 Atl. 906) ; *Ecuyer v. Benevolent Assn. of Elks*, 152 La. 73 (92 So. 739) ; 17 Corpus Juris 776.

The existing sidewalk and pavement enhanced the value of the premises, and evidence of their cost and value was admissible for the same reason that evidence of value and cost of buildings and other improvements was admissible. *Stewart v. City of Council Bluffs*, 84 Iowa 61; *Kukkuk v. City of Des Moines*, 193 Iowa 444; *Richardson v. City of Webster City*, 111 Iowa 427; *West Chicago Park Com. v. Boal*, 232 Ill. 248 (83 N. E. 824) ; *Platt v. Town of Milford*, 66 Conn. 320 (34 Atl. 82) ; *Holley v. Town of Torrington*, 63 Conn. 426, 433 (28 Atl. 613) ; *Seaman v. Borough of Washington*, 272 Pa. St. 467 (33 Atl. 756) ; 28 Cyc. 1077. While plaintiff testified in general terms that, in his judgment, the old paving was better than the new, one of his witnesses testified that, in the nature of things, it would have been necessary to have had a new pavement in a very short time. The assessed cost of new sidewalk or new paving throws no light on the value or cost of a preceding one of unknown age or condition, or on the value of the property as enhanced by the old, especially in the absence of any basis for comparison of original construction or of conditions then or since existing. The evidence of the cost of rebuilding the house and of the new sidewalk and paving should have been excluded.—*Reversed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.