# In re Opening of Parkway.

*Statutes—Construction—Local statutes—Inconsistent general statutes—Repeal of local act.*

1. A local or special act is not repealed by implication by a subsequent general statute containing inconsistent provisions on the same subject, unless there is a clearly manifested legislative intent disclosed by the general act to repeal the local act.

*Jurisdiction, Q. S.—Eminent domain—Cities—Parkways—Act of June 8, 1907, P. L. 466.*

2. The legislation conferring upon the Court of Quarter Sessions of Philadelphia County jurisdiction of proceedings to condemn private property for the purpose of opening streets has not been repealed by the Act of June 8, 1907, P. L. 466, authorizing cities to appropriate private property for the purposes of making parks, parkways, etc., and providing in effect, that the condemnation proceedings shall be instituted in the Court of Common Pleas. In such case the Court of Quarter Sessions exercises concurrent jurisdiction with the Court of Common Pleas.

Argued March 24, 1915. Appeal, No. 283, Jan. T., 1914, by the Pennsylvania Mutual Life Insurance Com-

pany, from decree of Q. S., Philadelphia Co., Sept. Sess., 1912, No. 25, granting leave to the City of Philadelphia to file a bond in eminent domain proceedings, in the matter of the opening of the Parkway from 16th and Arch streets to Appletree street, in the 10th ward of the City of Philadelphia. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition by the City of Philadelphia for leave to file a bond to secure the damages caused by the opening of a parkway. Before BARRATT, J.

The opinion of the Supreme Court states the facts.

The court granted the petition. The Pennsylvania Mutual Life Insurance Company appealed.

*Error assigned* was the decree of the court.

*John C. Gilpin,* of *Graham & Gilfillan,* for appellant.

*Edwin O. Lewis,* Assistant City Solicitor, with him *O. Chas. Brodersen,* Assistant City Solicitor, and *Michael J. Ryan,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 10, 1915:

By an ordinance approved by the mayor of the City of Philadelphia on July 3, 1912, entitled an ordinance to take, use and appropriate certain properties for the parkway and to authorize the opening of a certain part of the parkway and the entering of security for the payment of damages therefor, it was ordained by section 1 of the ordinance that under the authority of the act of assembly approved June 8, 1907, P. L. 466, the city appropriate certain described property for the purposes of the parkway. Section 2 of the ordinance provides that "the director of the department of public works is hereby authorized to notify the owners of property over and through which so much of the parkway will pass, as is within the lines thereof, between the corner of Sixteenth

and Arch streets and Appletree street, as formerly laid out upon the city plan, that at the expiration of three months from the date of said notice, same will be required for public use." Section 3 authorizes the mayor to enter security on behalf of the city for the payment of any damages which may be assessed by reason of the taking of the property described in section 1 and the opening of the parkway, and that upon the filing of the bond and at the expiration of three months, the director of the department of public works shall forthwith proceed to open the parkway within the boundaries as set forth in section 2 of the ordinance.

In July, 1912, a notice was served on the owners of property, through which the parkway passes, that at the expiration of three months from the date thereof the parkway would be opened for public use between the corner of Sixteenth and Arch streets and Appletree street, through and over the ground owned by them. A petition was presented to the Court of Quarter Sessions of Philadelphia County in September, 1912, setting forth, inter alia, that it had been ordained by the city authorities that the public highway known as the parkway should be opened to public use through a lot of ground owned by petitioner, and that the above recited notice had been given him, that he would be greatly injured by the opening of the street through his property, and praying that his claim for damages be referred to the proper tribunal, under the law, for the assessment of said damages. In compliance with the prayer of this petition, the court appointed viewers who caused notices to be served upon the owners of the real estate affected by the proceedings to open the parkway, including the Pennsylvania Mutual Life Insurance Company, the appellant. The viewers made a report to the court of Quarter Sessions setting forth the damages awarded to each of the owners of property taken or appropriated for the parkway. The appellant company was awarded $43,285 and it entered an appeal from the confirmation

of the report to the Court of Common Pleas of Philadelphia County. This appeal is still pending and undetermined. It is stated in the appellee's argument, and it does not seem to be controverted, that on the faith of the awards of the jury of viewers the city has paid out on the awards a sum in excess of $150,000.

On June 20, 1914, the city presented its petition to the Court of Quarter Sessions setting forth, inter alia, that the parkway from Appletree street to Sixteenth and Arch streets is duly laid out and plotted upon the confirmed public plans of the city, that the director of the department of public works was authorized and directed by section 2 of the ordinance of June 3, 1912, to notify the owners of property over and through which that part of the parkway will pass that, at the expiration of three months, the street will be required for public use, that the mayor was authorized to enter security for the payment of any damages which might be awarded by reason of the opening of the street so that it might be opened immediately, that the public exigency requires that the street should be immediately opened for public use, and praying that the city be permitted to file its bond to secure payment of the damages awarded to the property owners, and that upon the filing of the bond the proper officers be allowed to enter upon and immediately open the street for public use between the designated points. The court granted the rule and subsequently entered a decree in compliance with the prayer of the petition. From that decree this appeal was taken.

The only question in the case is whether the Court of Quarter Sessions had jurisdiction to make the order appealed from. The appellant contends that the court was without jurisdiction, that the ordinance was passed under the authority conferred by the Act of June 8, 1907, P. L. 466, and that the proceedings to appropriate property should have been in the Common Pleas as required by that act and not in the Court of Quarter Sessions. The Act of 1907 authorizes cities to acquire property for

parkways and that when compensation and damages
arising therefrom cannot be agreed upon shall be ascer-
tained and determined by the Court of Common Pleas
as provided in the Act of June 8, 1895, P. L. 188.   We
held in Pennsylvania Mutual Life Insurance Company v.
Philadelphia, 242 Pa. 47, that so much of the Act of
1907 as authorized and provided for the appropriation
by cities of neighboring private property within two
hundred feet of the boundary line of the property taken
and appropriated for a parkway was unconstitutional
and void.   The contention of the appellant company is
that the other provisions of the act are still in force, and
confer exclusive jurisdiction on the Common Pleas to
ascertain and determine the damages to the property
owner by reason of the appropriation of his land for the
use of the parkway.

   We do not agree with the contention of the appellant
that, conceding the validity of the remaining portions of
the Act of 1907, the Common Pleas has exclusive juris-
diction in the present case to determine the damages due
the injured property owners by reason of the appropri-
ation of their property in the location and construction
of the parkway.   We think the Court of Quarter Ses-
sions has concurrent jurisdiction.   From our earliest
colonial history to the present time, where not otherwise
directed by a local or special statute, the location and
opening of public highways including city streets has
been committed to the Court of Quarter Sessions.   The
authority was exercised throughout the State until the
revision of the road laws by the Act of June 13, 1836,
P. L. 551, which continued the jurisdiction of that court
and which Mr. Justice STRONG said in Smedley v. Erwin,
51 Pa. 445, 449, prescribed a general system for laying
out and opening roads and streets throughout the Com-
monwealth, and that all its provisions are as applicable
to Philadelphia as to any other county, except so far as
they are expressly declared to be inapplicable.   In all
other respects, says he, there is no difference, and no

other difference was intended. Aside from the general jurisdiction exercised by the Quarter Sessions throughout the Commonwealth over the location and opening of roads and streets, there is a local act applicable to the City of Philadelphia passed April 21, 1855, P. L. 264, the seventh section of which provides as follows: "Whenever councils shall deem the public exigency to demand it, they may order, by ordinance, any street laid upon any of the public plans of the city to be opened, giving three months' notice thereof to the owner; whereupon any of the owners, whose ground will be taken by such street, may forthwith petition the Court of Quarter Sessions for viewers to assess the damages which such owners may sustain by the opening of such street, and if the same be not paid within one year, may sue said city for the recovery thereof: Provided, that security shall be given by said city to the owner for the payment of such damages, before his ground shall be actually taken." This act provides a complete and adequate remedy in the Quarter Sessions for the owner of property which has been appropriated by the city for a street. The provisions of the statute were complied with in the proceedings in the present case. The title to the ordinance, as will be observed, does not refer to the Act of 1907, nor is it mentioned in section 2 or section 3 of the ordinance. Section 1 of the ordinance refers to the Act of 1907 and bases the attempted condemnation of the two hundred feet outside of the line of the parkway on the act. The present proceeding was instituted for the condemnation of the land included within the lines of the parkway, and the language of sections 2 and 3 of the ordinance indicates that in the enactment of these sections councils had in view the provisions of the Act of 1855. Those provisions would be sufficient in an ordinance enacted for the condemnation of land under the Act of 1855. It will be noted that the subsequent proceedings for the appointment of viewers, the report of the viewers, and the application of the city to be permitted to file its bond

were all in conformity to the provisions of the local act. The city's petition for leave to file its bond avers the jurisdictional fact required by the statute "that the public exigency requires that the said street should be immediately opened to public use." It is, therefore, clear that unless the Act of 1907 repeals the Act of 1855 and furnishes an exclusive remedy for the injured property owner, the Court of Quarter Sessions had jurisdiction to entertain the petition of the city for the approval of its bond to secure the damages accruing to the appellant company by reason of the construction of the parkway through its premises.

In re opening of Twenty-eighth Street, 102 Pa. 140, it was held that the jurisdiction of the Quarter Sessions cannot be taken away by implication, and that the Act of 1855 did not oust that jurisdiction, but, in the cases to which it applied, merely took away the exclusive jurisdiction previously vested in the court. Delivering the opinion in that case, TRUNKEY, J., said, inter alia (p. 149) : "If the jurisdiction has been taken away it must be by an enactment which expressly or impliedly repeals the statute which conferred it. There is no express repeal, and there can be none by implication unless there is strong repugnancy or irreconcilable inconsistency. A grant of concurrent jurisdiction to another tribunal, or to the city councils, takes away the exclusive quality." In Seifreid v. Commonwealth, 101 Pa. 200, we said (p. 203) : "Sometimes it has been held that a general affirmative statute will repeal a prior local one upon the same subject. This is not the rule. To effect such result, the repugnancy must be strong, or the inconsistency irreconcilable. There is no repeal where the intendment of the general is not to supply the local. A general statute, without negative words, cannot repeal a previous statute which is particular, even though the provisions of one be different from the other."

In Frederick Street, 150 Pa. 202, it was held that the power of a borough of its own motion to open or widen

a street under the General Borough Act of April 3, 1851, P. L. 320, was not impaired by the Act of May 16, 1891, P. L. 75, providing for the passage of ordinances for such purposes on a petition of a majority of the property owners. In delivering the opinion Mr. Justice MITCHELL said (p. 205) : "A precise analogy is to be found in the City of Philadelphia, where streets may be opened on their own motion by councils, or by the Court of Quarter Sessions upon petition, and doubtless similar double methods coexist in other municipalities of the State. Repeals by implication are never favored, and the implication would have to be very strong indeed, to justify a court in adjudging an implied repeal of the power to lay out, open and widen streets, which has existed in some form from the colonial days, and is an essential part of our modern conception of a municipality of any grade."

The Act of 1855 is a local act authorizing the councils of Philadelphia where the public exigency demands it, to order, by ordinance, the opening of any streets which are on the city plan, and providing for the assessment and securing of the damages by proceedings in the Quarter Sessions. The Act of 1907 is a general act and applies to all cities of the Commonwealth. Ordinarily a local or special act is not repealed by implication, as the authorities show, by a subsequent general statute containing inconsistent provisions on the same subject unless there is a clearly manifested legislative intent, disclosed by the general act, to repeal the local act. "It is against reason," says Chief Justice BLACK in Brown v. County Commissioners, 21 Pa. 37, 43, "to suppose that the legislature in framing a general system for the State, intended to repeal a special act which the local circumstances of one county had made necessary." We perceive no such intent in the Act of 1907. In fact, there is no inconsistency or repugnancy between that act and the local Act of 1855. There are no negative words in the general statute which would indicate an intention to repeal the former local act. The only difference in the provisions of the

two statutes is the court having jurisdiction of the con＋ demnation proceedings. This, as the cases hold, vests only a concurrent remedy in the Common Pleas, and will not effect a repeal of a former local statute: Harrisburg v. Sheck, 104 Pa. 53; Frederick Street, 150 Pa. 202; Seaman v. Washington Borough, 172 Pa. 467. Nor will the general repealing clause of the Act of 1907 have that effect; it simply repeals former acts inconsistent with or repugnant to its own provisions and adds no repealing force to an affirmative statute: Hickory Tree Road, 43 Pa. 139, 142.

We are all of the opinion that the decree of the court below giving leave to the city to secure the damages caused by the opening of the street should be affirmed, and it is so ordered.